IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03152-WJM-MJW

DAVID A. THORNTON,

Plaintiff(s),

v.

SGT. KRAMER,
SGT. ADAMIC, and
CO.O. CHRISTENSON,

Defendant(s).

---

**RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 37)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before the undersigned pursuant to an Order Referring Case issued by Judge William J. Martinez on December 27, 2012 (Docket No. 12).

Plaintiff was incarcerated when he commenced this action. He has since been released from custody. He alleges the following in his Prisoner Complaint (Docket No. 1) that is apparently brought pursuant to 42 U.S.C. § 1983. On December 1, 2010, at Colorado Territorial Correctional Facility ("CTCF"), at around 9:00 a.m., there was a facility "shakedown." Defendants Sergeants Kramer and Adamic were in command. Plaintiff and his cell mate went through all procedures as ordered by the correction officer on duty when a lot of rude, sexual in nature, comments were made toward plaintiff and his cell mate once they were nude and given orders of the "stripout process." Plaintiff was taken to the lieutenant on duty because after all of the verbal

2

abuse and extremely rude and unprofessional comments, i.e., "penis being extra small, but you have a real nice '<u>FAT</u>' ass," plaintiff refused to turn back around three times and "show [his] asshole because it looked so 'tight,' and now cough!!" (Docket No. 1 at 3) (emphasis in original). Plaintiff refused after the being asked the second time to turn back around, so he was cuffed and taken to medical. Adamic and Kramer re-ordered plaintiff to strip totally naked while he was in lock up in full body chains. Plaintiff complied with every order given, even to lay face down on the cold, hard concrete floor. At that point, upon Kramer's order, defendant CO Christenson dropped down on plaintiff's backside and forcefully opened plaintiff's "butt cheecks [sic] & his left thumb enter 3/4" deep inside [plaintiff's] reckum [sic] hole & [plaintiff] look back at him, he's smileing [sic]." (Docket No. 1 at 3). This was done for their "viewing pleasure & too [sic] humiliate [plaintiff] as a man, human, & person of African American decent [sic]." (Docket No. 1 at 4). Plaintiff characterizes these actions as "sexual assault & rape/sodomy." (Docket No. 1 at 4). Adamic did nothing to stop Kramer or Christenson. He merely stood there with a cannister of pepper spray when plaintiff "was looking at them with total & complete fear for [his] life, safety & health all in mind, hopeing [sic] & praying [he'd] come out of that horrible situation alive & in one piece because Sgt Kramer had threatned [sic] 'to make [plaintiff's] life <u>hell</u>." (Docket No. 1 at 4) (emphasis in original).

In addition, plaintiff spoke with several captains and investigators who came from DOC headquarters, including Major Furton who "tiried [sic] to cover up all [plaintiff's] information & the actions of his co-workers, by continiously [sic] haveing [sic] [plaintiff] (RFP'd)=removed from Gen Population. So as to keep [plaintiff] from haveing [sic]

3

access to legal help & or the law library & sending out mail to the Fremont Co. Courts. [Plaintiff] was (FRP'd) between (4-6) times before [sic] being finally sent away from (CTCF) - to - (Ft. Lyons) . . . ."  (Docket No. 1 at 6).

Plaintiff alleges an Eighth Amendment violation due to cruel and unusual punishment, a Fifth and Fourteenth Amendment "violation of due process of an institutional 'sexual misconduct & rape/sodimy [sic] actions" (Docket No. 1 at 3), and perhaps a First Amendment violation for denial of access to the court.

The relief sought is for "the named DOC officers be held accountible [sic] for their actions indiviually [sic] & as a whole group as they acted in part together more job training, demotions, job removale [sic]. To take sex offender classes to have to register & . . . $10 million per inch that Mr. Christenson penitrated [sic] my anus at the cammand [sic] & observation of Sgts - Kramer & Adamic . . . . " (Docket No. 1 at 8).

Now before the court for a report and recommendation is the Defendants' Motion for Summary Judgment (Docket No. 37) pursuant to Fed. R. Civ. P. 56.  Defendants seek summary judgment on the following grounds: (1) they are immune from liability for damages to the extent this suit was brought against them in their official capacities, (2) plaintiff's claim regarding interference with access to the courts is without merit, (3) plaintiff's Complaint fails to state a due process claim, and (4) defendants are entitled to qualified immunity as to plaintiff's Eighth Amendment claim because there was no violation of plaintiff's Eighth Amendment rights and any right allegedly violated was not clearly established at the time of the events.  Plaintiff did not file a response despite being given additional time to do so (see Docket No. 43 - Courtroom Minutes/Minute Order from the Final Pretrial Conference on December 12, 2013, allowing plaintiff to file

4

a response on or before December 18, 2013).  The court has very carefully considered the motion, the attachments thereto, and applicable Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of the court file.  The court now being fully informed makes the following findings, conclusions, and recommendation that the motion be granted.

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Id. "The operative inquiry is whether, based on all

5

documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Since the plaintiff is not an attorney, his pleading has been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).

**Official Capacity**

Defendants correctly assert that to the extent the plaintiff is suing them in their official capacity for damages, they are entitled to immunity pursuant to the Eleventh Amendment. It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." Hunt v. Bennett, 17 F.3d 1263, 1267

(10th Cir. 1994). Therefore, to the extent that the plaintiff's claims against the defendants are against them in their official capacities for monetary damages, such relief is barred by the Eleventh Amendment, and summary judgment should enter for the defendants on any such claims.

**First Amendment Claim**

As defendants note, it is unclear, but it appears that plaintiff has asserted a claim for alleged interference with his access to the courts. As noted above, plaintiff alleges in his Prisoner Complaint that he spoke with several captains and investigators who came from DOC headquarters, including Major Furton who "tiried [sic] to cover up all [plaintiff's] information & the actions of his co-workers, by continiously [sic] haveing [sic] [plaintiff' (RFP'd)=removed from Gen Population. So as to keep [plaintiff] from haveing [sic] access to legal help & or the law library & sending out mail to the Fremont Co. Courts. [Plaintiff] was (FRP'd) between (4-6) times before [sic] being finally sent away from (CTCF) - to - (Ft. Lyons) . . . ." (Docket No. 1 at 6).

Defendants correctly note that plaintiff does not allege in his pleadings when this purported conduct occurred. Furthermore, plaintiff attributes this conduct to "Major Furton" who is not a defendant in this action. Plaintiff does not allege that any of the defendants participated in any denial of his access to the courts. Consequently, summary judgment should enter for the defendants on any First Amendment claim.

**Due Process Claim**

Plaintiff claims that the strip search was a Fifth and Fourteenth Amendment "violation of due process of an institutional 'sexual misconduct & rape/sodimy [sic]

actions" (Docket No. 1 at 3).  Defendants correctly assert that it seems that plaintiff is raising a substantive due process claim.  However, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).  Claims alleging unreasonable prison strip searches are analyzed under the Fourth Amendment or the Eighth Amendment.  In fact, plaintiff has raised an Eighth Amendment claim with respect to the strip search.  He has not alleged any facts or claims that would fall under the Fourth Amendment.

Based on the above, summary judgment should enter for the defendants on the plaintiff's due process claims.

**Eighth Amendment Claim**

Defendants assert they are entitled to qualified immunity as to plaintiff's Eighth Amendment claim.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  It "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Id.  "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "Because the focus is on whether the officer had

8

fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." Id.

When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001). The Supreme Court has held that the federal courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. at 236.

"Requiring the law to be clearly established provides defendants with 'fair warning' that their conduct is unconstitutional." Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 841 (10th Cir. 2005). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." Id. (quotations omitted). To be clearly established:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted)

9

Here, defendants first assert that there was no violation of the plaintiff's Eighth Amendment rights. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to the scrutiny of the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation omitted). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amed. VIII. Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986). "An inmate making a direct challenge to conditions of confinement under the 8th Amendment, must show that, judged by contemporary standards of decency, the conditions either involve the wanton and unnecessary infliction of pain, that they are grossly disproportionate to the severity of the crime, or that they entail serious deprivation of basic human needs." Georgacarakos v. Wiley, 2010 WL 1291833, at *11 (D. Colo. Mar. 30, 2010) (internal quotation marks and citation omitted). "Prison officials must . . . take reasonable measures to guarantee those inmates' safety." Id. (citation omitted). "An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind." Matthews v. Wiley, 744 F. Supp.2d 1159, 1176 (D. Colo. 2010). "The subjective component follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Id. (quotations omitted).

"[A]n inmate has a constitutional right to be secure in [his] bodily integrity and free from attack by prison guards." Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir.

Case 1:12-cv-03152-WJM-MJW Document 49 Filed 03/11/14 USDC Colorado Page 10 of 13

10

1993). "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the unnecessary and wanton infliction of pain, that is forbidden by the Eighth Amendment." Joseph v. U.S. Federal Bureau of Prisons, 2000 WL 1532783, at *1 (10th Cir. Oct. 16, 2000) (quotation marks omitted) (quoting Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997)). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." Id. (quotation marks omitted) (quoting Freitas, 109 F.3d at 1338)). "However, a simple claim that the alleged unwanted touching cause emotional distress 'is insufficient to implicate the Eighth Amendment.'" McLain v. Dussart, 2014 WL 717893, at *10 (D. Colo. Feb. 25, 2014) (quoting Joseph, 2000 WL 1532783, at *1). Furthermore, visual body cavity searches are constitutionally permissible, even absent probable cause. Bell v. Wolfish, 441 U.S. 520, 558-60 (1979). Such searches must be "conducted in a reasonable manner," and guards must not conduct the searches "in an abusive fashion." Id. at 560. When determining whether a specific body cavity search is constitutionally valid, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. at 559.

Here, defendants' statement of material facts, supported by affidavits and exhibits, is undisputed by plaintiff who did not respond to the defendants' motion. The undisputed facts establish that defendants did not touch plaintiff in any manner that

11

could be deemed sexual or inappropriate and they did not make any inappropriate or sexually-suggestive comments to plaintiff. The search was performed in accordance with DOC policy, was justified by the need for a thorough search of the entire cell house and plaintiff's refusal to complete the cavity search, involved minor intrusion to the plaintiff's person, and was conducted in private.

More specifically, the undisputed facts show that on December 1, 2010, Kramer and Christenson were ordered to conduct strip searches of each inmate in Cell House 1, cell by cell, as part of a mass facility mobilization exercise that included the thorough search of Cell House 1. The search of each inmate was to be done before being transferred to the gym to ensure they were not able to transfer contraband. Then, the entire Cell House would be searched for contraband. Each inmate's search included a fully body search as provided by DOC Administrative Regulation 300-06. When Kramer and Christenson initially strip searched plaintiff, plaintiff refused to comply with the last step of the search asked of all inmates during the searches, which was to bend over, spread his buttocks, and cough, pursuant to policy. The purpose of this step in the search was to inspect plaintiff's anus for any visible contraband. After refusing this command several times, plaintiff was removed to segregation so that the search could be conducted again. When the search was conducted a second time, Sgt. Adamic was present. Both of the strip searches were conducted privately in a cell, and the only witnesses were Kramer, Christenson, and Adamic, who are all male. During the second search, plaintiff again failed to comply with the order to bend at the waist, spread his buttocks, and cough, and thus he was requested to lie on his stomach on the floor. Sgt. Kramer then instructed CO Christenson to spread plaintiff's buttocks manually so that

12

he could visually inspect plaintiff's anus for contraband. Christenson thus crouched next to plaintiff, used the palms of his hands to spread plaintiff's buttocks, and a visual inspection was made of plaintiff's anus. The search was then over. No one touched plaintiff in any sexual or prurient way, and nothing penetrated plaintiff's anus. Plaintiff did not cry out in pain or complain of any pain.

Based upon the undisputed facts, this court finds that the contact here does not rise to the level of an Eighth Amendment violation. Therefore, defendants are entitled to qualified immunity, and summary judgment should enter in their favor on plaintiff's Eighth Amendment claim.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion for Summary Judgment (Docket No. 37) be **GRANTED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley**

13

**v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  March 11, 2014               s/ Michael J. Watanabe
      Denver, Colorado              Michael J. Watanabe
                                       United States Magistrate Judge